# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF WISCONSIN

**WILLIAM LEE EVANS,**

        **Plaintiff,**

 **v.**                        **Case No. 25-CV-808**

**DEPUTY TYLER HOERIG, *et al.*,**

        **Defendants.**

## DECISION AND ORDER

Plaintiff William Lee Evans, who was previously incarcerated and representing himself, brings this lawsuit under 42 U.S.C. § 1983. Williams was allowed to proceed against defendants Deputy Tyler Hoerig and Deputy Daniel Osieczanek pursuant to the Fourteenth Amendment for allegedly racially profiling Evans. He was also allowed to proceed on a claim against Fond du Lac County pursuant to *Monell v. New York City Dep't of Soc. Servs.*, 436 U.S. 658, 690-691 (1978), for its allegedly unconstitutional policy of racial profiling. Additionally, Evans was allowed to proceed against Osieczanek pursuant to the Fourth Amendment for allegedly using excessive force during a traffic stop.

On December 3, 2025, the defendants filed a motion for partial summary judgment on the excessive force claim. (ECF No. 22). Then on December 12, 2025, the defendants filed a second motion for partial summary judgment on the equal protection claims against the individual defendants and Fond du Lac County. (ECF No. 33.) Those

motions are fully briefed and ready for a decision. The parties have consented to the jurisdiction of a magistrate judge. (ECF Nos. 4, 20.)

## PRELIMINARY MATTERS

The defendants moved to strike the response brief that Evans filed on January 14, 2026 (ECF No. 44), stating that Evans already filed a brief in response to their motion for partial summary judgment on the excessive force claims. (ECF No. 46.) However, Evans clearly labeled this response, "Response to the Summary Judgment of Tyler Hoerig," which is not a response to the defendants' first motion for partial summary judgment but a response to their second motion for partial summary judgment. The court notes that Evans filed a prior response brief that addresses the Equal Protection Claim as to defendant Osieczanek (ECF No. 42), but the defendants did not offer that response as a reason to strike ECF No. 44.

The court is entitled to construe *pro se* submissions leniently and in a light most favorable to the plaintiff. *See Grady v. Hardy*, 826 F.3d 1000, 1005 (7th Cir. 2016). Given the multiple motions for partial summary judgment, it appears it was unclear to Evans how to respond to the defendants' motions. Allowing all three responses provides the court greater clarity. As such, the defendants' motion is denied.

The defendants also argue that Evans failed to follow Fed. R. Civ. P. 56 and did not properly respond to their proposed findings of fact. (ECF no. 40 at 1.) In addition to liberally construing a *pro se* plaintiff's submissions, district courts may overlook a plaintiff's noncompliance by construing the limited evidence in a light most favorable to the plaintiff. *See Gray* 826 F.3d at 1005. Evans's response materials contain sufficient

facts to allow the court to rule on the defendants' motions for partial summary judgment. Evans also invokes 28 U.S.C. § 1746 in his complaint, which is enough to convert the complaint into an affidavit for purposes of summary judgment. *See Beal v. Beller*, 847 F.3d 897, 901 (7th Cir. 2017); *Owens v. Hinsley*, 635 F.3d 950, 954–55 (7th Cir. 2011). As such, the court will consider the information contained in Evans's submissions where appropriate in deciding defendants' motions.

## FACTS

On April 4, 2025, at approximately 9:08 p.m., defendants Hoerig and Osieczanek, deputy sheriffs for Fond du Lac County, pulled Evans over because his passenger side head lamp was burned out. (ECF No. 25, ¶ 1.) Hoerig approached Evans's car and asked where Evans was coming from and where he was going. (ECF No. 44 at 1.) Evans stated that he was coming from Milwaukee, Wisconsin, and headed toward Green Bay, Wisconsin, but he pulled off the highway in Fond du Lac to get some food from McDonalds. (*Id.*) Hoerig asked how Evans knew there was a McDonalds off the exit, and Evans responded that there was a sign on the highway. (*Id.*)

As Evans was giving Hoerig his license and registration, he asked Hoerig why he was pulled over. (ECF No. 44 at 1.) Hoerig responded that it was because his passenger-side headlamp was burned out. (*Id.*) Evans stated that couldn't be possible because he just replaced the headlamp, and he asked if he could get out of the car to make sure it was actually out. (*Id.*) Hoerig stated that he wanted Evans to stay in the car for Evans's safety. (*Id.*) Hoerig then went to run Evans's name through "the system". (*Id.*)

3

While Hoerig was doing that, Osieczanek, who was wearing a body camera, stayed with Evans. (ECF No. 44 at 1.) Osieczanek and Evans engaged in small talk. (ECF No. 39 at 1.) At some point, the officers learned that Evans had an "open case for fleeing." (ECF No. 44 at 1.) Non-defendant Officer Paltz then approached the car and asked Evans to get out of the car so they could speak with him. (ECF No. 39 at 1.) Evans refused, stating that he did nothing wrong, and asked them to call their supervisor at least three times. (*Id.*) Osieczanek then told Evans that if he did not get out of the car they would drag him out of the car and he would be charged with obstructing or resisting arrest. (*Id.*) Evans again refused, telling Osieczanek he did not feel safe. (*Id.* at 1-2.) Evans states he then saw a deputy reach for what he believed to be a gun (though he admits he later realized it was a taser). (*Id.* at 2.) Evans states he then heard a "big pop sound and realized I was hit with something before I took off from the stop fearing for my life." (*Id.*)

The court has the benefit of Osieczanek's body camera video, which has audio. (ECF No. 28.) The video largely corroborates Evans's version of the events. It also shows that Evans's headlight was burned out. The video shows that the officers, including Osieczanek, spent approximately two-and-a-half minutes arguing with Evans about getting out of the car. Evans became increasingly agitated and refused to get out of the car. Osieczanek calmly explained that he was ordering Evans out of the car and that, if they had to force him out of the car, he would be charged with resisting arrest.

Evans then moved his hand to his gear shift. At that point, Osieczanek drew his taser and, as Evans was pulling away, he deployed it. It is unclear from the video if the

4

taser hit Evans. Less than three seconds pass between Evans placing his hand on the gear shift and Osieczanek deploying his taser. (*Id.* 7:15-10:04.) A high-speed chase then ensued with speeds hitting up to 124 mph, and Evans is apprehended a few minutes later. (ECF No. 25, ¶¶ 16-18.)

Evans asserts that his state public defender told him that Milwaukee "is known for Black Africa-Americans to sell and traffic drugs to northern cities of Wisconsin. . . . [The police] sit on hwy 41 and watch potential cars they think may be illegal and have drugs and they stop them." (ECF No. 42 at 1.)

## SUMMARY JUDGMENT STANDARD

The court shall grant summary judgment if the movant shows there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a); *see also Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986); *Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986). "Material facts" are those under the applicable substantive law that "might affect the outcome of the suit." *See Anderson*, 477 U.S. at 248. A dispute over a "material fact" is "genuine" if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.*

In evaluating a motion for summary judgment, the court must view all inferences drawn from the underlying facts in the light most favorable to the nonmovant. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). However, when the nonmovant is the party with the ultimate burden of proof at trial, that party retains its burden of producing evidence which would support a reasonable jury verdict. *Celotex Corp.*, 477 U.S. at 324. Evidence relied upon must be of a type that would be

5

admissible at trial. *See Gunville v. Walker*, 583 F.3d 979, 985 (7th Cir. 2009). To survive summary judgment a party cannot just rely on his pleadings but "must set forth specific facts showing that there is a genuine issue for trial." *Anderson*, 477 U.S. at 248. "In short, 'summary judgment is appropriate if, on the record as a whole, a rational trier of fact could not find for the non-moving party.'" *Durkin v. Equifax Check Servs., Inc.*, 406 F.3d 410, 414 (7th Cir. 2005) (citing *Turner v. J.V.D.B. & Assoc., Inc.*, 330 F.3d 991, 994 (7th Cir. 2003)).

## ANALYSIS

Evans claims that the defendants violated his constitutional rights pursuant to the Fourteenth Amendment's Equal Protection Clause when they pulled him over because they were racially profiling him. He also asserts that Fond du Lac County has an unconstitutional policy of racial profiling. Additionally, he claims that Osieczanek used excessive force in violation of his Fourth Amendment rights when he deployed his taser.

*Equal Protection Claim and Related Monell Claim*

To demonstrate discrimination in violation of the Fourteenth Amendment's Equal Protection Clause a plaintiff "must show that 'the defendants' actions had a discriminatory effect and were motivated by a discriminatory purpose.'" *Taylor v. Schwarzhuber*, 132 F.4th 480, 490 (7th Cir. 2025) (quoting *Chavez v. Ill. State Police*, 251 F.3d 612, 635-36 (7th Cir. 2001)). "To prove discriminatory purpose, plaintiffs must demonstrate that the decision maker . . . selected or reaffirmed a particular course of action at least in part because of  . . . its adverse effects upon an identifiable group." *Id.*

(internal citations omitted). "To prove discriminatory effect, plaintiffs must show that they are members of a protected class, that they are otherwise similarly situated to members of the unprotected class, and that the plaintiffs were treated differently from members of the unprotected class." *Id.* (internal citations omitted). "Plaintiffs can do so by identifying individuals or by presenting statistics. Importantly, plaintiffs must show both discriminatory purpose and discriminatory effect." *Id.* (internal citations omitted).

Evans speculates that he was pulled over because of a general suspicion amongst the Fond du Lac County Sheriff's department that Black people are running drugs from Milwaukee to Green Bay. While a non-movant "is entitled . . . to all reasonable inferences in her favor, inferences that are supported by only speculation and conjecture will not defeat a summary judgment motion." *Herzog v. Graphic Packing Int'l, Inc.*, 742 F.3d 802, 806 (7th Cir. 2014). The video shows that Evans's headlight was burned out. As such, the defendants had a legitimate, non-discriminatory reason for stopping him. Even if Evans could show a discriminatory purpose, he does not demonstrate discriminatory effect. He provides no evidence that he was treated differently than members of the unprotected class—that is, that only Black motorists are pulled over for a burned out headlight. Summary judgment is granted in favor of the Hoerig and Osieczanek on the Equal Protection Claim.

Because "a municipality cannot be held liable under *Monell* where there is no underlying constitutional violation by a municipal employee," *Sallenger v. City of Springfield, Ill.*, 630 F.3d 499, 504 (7th Cir. 2010), the *Monell* claim against Fond du Lac County is also dismissed.

*Excessive Force Claim*

The court examines an excessive force claim under the Fourth Amendment's objective reasonableness standard. *Dawson v. Brown*, 803 F.3d 829, 833 (7th Cir. 2015). "Whether a police officer used excessive force is analyzed from the perspective of a reasonable officer under the circumstances, rather than examining the officer's actions in hindsight." *Id.* The court considers several relevant factors, "including the severity of the crime; whether the suspect posed an immediate threat to the officers or others; whether the suspect was resisting or evading arrest; whether the individual was under arrest or suspected of committing a crime; whether the individual was armed; and whether the person was interfering or attempting to interfere with the officer's duties." *Id.* Where the material facts are undisputed, "reasonableness is a pure question of law." *Siler v. City of Kenosha*, 957 F.3d 751, 759 (7th Cir. 2020).

Osieczanek argues that he is entitled to qualified immunity because "an officer's use of a Taser against an actively resisting subject either does not violate a clearly established right or is constitutionally reasonable." *Dockery v. Blackburn*, 911 F.3d 458, 467 (7th Cir. 2018). Officers are not entitled to qualified immunity where a subject is only passively resisting or not resisting at all. *Id.*

Evans asserts that Osieczanek's deployment of the taser is what prompted him to decide to speed away because he thought he was shot. However, Osieczanek's body camera clearly contradicts this version of events. "Where opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts for the

8

purposes of ruling on a motion for summary judgment." *Scott v. Harris*, 550 U.S. 327, 376 (2007). The body camera footage clearly shows that Osieczanek did not deploy the taser until after Evans put his hand on the gear shift and began to pull away. Evans was also refusing to comply with the officers' orders. As such, Osieczanek's use of the taser was constitutionally reasonable. Summary judgment is granted in his favor.

## CONCLUSION

For the foregoing reasons, the defendants' motions for partial summary judgment are granted. Because there are no remaining claims, the case is dismissed. Because the case is dismissed, the court denies as moot Evans's motion for an order granting summary judgment (ECF No. 53) and motion for damages (ECF No. 58).

## ORDER

**NOW, THEREFORE, IT IS HEREBY ORDERED** that the defendants' partial motions for summary judgment (ECF Nos. 22, 33) are **GRANTED.**

**IT IS FURTHER ORDERED** that the defendants' motion to strike (ECF No. 46) is **DENIED**.

**IT IS FURTHER ORDERED** that Evans's motion for an order granting summary judgment (ECF No. 53) and motion for damages (ECF No. 58) are **DENIED as moot**.

**IT IS FURTHER ORDERED** that this case is **DISMISSED**. The Clerk of Court will enter judgment accordingly.

This order and the judgment to follow are final. A dissatisfied party may appeal this court's decision to the Court of Appeals for the Seventh Circuit by filing in this court

9

a notice of appeal within **30 days** of the entry of judgment. *See* Federal Rules of Appellate Procedure 3, 4. This court may extend this deadline if a party timely requests an extension and shows good cause or excusable neglect for not being able to meet the 30-day deadline. *See* Federal Rule of Appellate Procedure 4(a)(5)(A).

Under certain circumstances a party may ask this court to alter or amend its judgment under Federal Rule of Civil Procedure 59(e) or ask for relief from judgment under Federal Rule of Civil Procedure 60(b). Any motion under Federal Rule of Civil Procedure 59(e) must be filed within **28 days** of the entry of judgment. The court cannot extend this deadline. *See* Federal Rule of Civil Procedure 6(b)(2). Any motion under Federal Rule of Civil Procedure 60(b) must be filed within a reasonable time, generally no more than one year after the entry of the judgment. The court cannot extend this deadline. *See* Federal Rule of Civil Procedure 6(b)(2).

A party is expected to closely review all applicable rules and determine what, if any, further action is appropriate in a case.

Dated at Milwaukee, Wisconsin this 19th day of May, 2026.

BY THE COURT

WILLIAM E. DUFFIN
United States Magistrate Judge

10